**UNITED STATES ex rel. PATRICOLA v. KARNUTH, Director of Immigration.**

**No. 1595–A.**

District Court, W. D. New York.
March 5, 1935.

Walter J. Mahoney, of Buffalo, N. Y., for petitioner.

George L. Grobe, U. S. Atty., and Willard R. Chamberlin, Asst. U. S. Atty., both of Buffalo, N. Y., for the United States.

RIPPEY, District Judge.

The relator, held on a warrant of deportation, petitions for his discharge by way of a writ of habeas corpus on the ground that he "did not have a fair hearing, in that there was no proof that he had been out of the United States within the past five years."

From the record of the proceedings of October 10, 1934, on which the warrant was based, it appears that the relator was born in Parco, Palermo, Italy, on July 26, 1891, and that he first entered the United States by way of the port of New York in 1908 on the steamer Antonio Lopez; that he entered legally and thereafter remained in the United States except for a period of three months in 1918 or 1919 when he worked for a contractor in Welland, Ontario, Canada, and for trips to Canada. The investigation was conducted by Inspector Walter W. Stearns at No. 3 Police Station in the City of Buffalo, when relator was detained by the Buffalo Police and was conducted in the English language in the presence of Detective Edwin J. McGuire of the Buffalo Police. Before questioning the relator, Inspector Stearns advised him that he was an immigration inspector; that he desired "to take a statement regarding your right to be and remain in the United States," and was told that "any statement which you make should be voluntary and you are hereby warned that any statement which you make may be used against you either in criminal or deportation proceedings." The relator stated that he was willing to make a statement and answer questions under those conditions. He was sworn by the inspector and testified, among other things, that he had not become an American citizen; that he was a widower; that he was a barber and a salesman for barbers supplies and had four children living in Buffalo, the youngest being seventeen years of age. The following questions and answers appear in the record of this hearing:

"Q. When were you last in Canada? A. About four years ago; I went to Niagara Falls, Ont., to see the lights.

"Q. How did you travel? A. By automobile.

"Q. How long were you in Canada? A. Maybe a couple of hours.

"Q. How did you return? A. We came over the bridge.

"Q. Which bridge? A. The one near the Falls. (Upper).

"Q. In what month were you in Canada? A. I can't remember.

"Q. Was it in the summer of 1930 or the winter of 1930? A. It was in the summer.

"Q. Would you say it was about July or August? A. I can't remember what month it was."

The testimony was taken by the inspector in longhand and later transcribed and signed by the inspector.

On the basis of the foregoing and other testimony to which later reference will be made, the relator was arrested under a telegraphic warrant issued by Turner W. Battle, the Assistant to the Secretary of Labor, under date of October 10, 1934, which charged that the alien was in the United States in violation of the Immigration Act of Feb. 5, 1917, § 19 (8 USCA § 155), whereupon he was given a further hearing on October 11, 1934. At this time he was again advised as to his rights and his right to be represented by an attorney, and the hearing was adjourned to October 18, 1934, to enable him to procure an attorney. On the adjourned date he was represented by an attorney and minutes of the hearing before Inspector Holahan were taken by a stenographer. The relator was again sworn and his attorney objected to all that part of the evidence referring to his re-entry in the summer of 1930. The relator then testified that he did not tell Inspector Stearns that his last re-entry was in the summer of 1930 and that he told the inspector that he could not remember when it was. He said he had not been in Canada since before 1926. The proceeding was thereupon adjourned to October 19, 1934, when Inspector Stearns was present and questioned at length by relator's attorney. The alien again positively denied saying to Inspector Stearns that he was in Canada in 1930 and testified that he was not there either in 1926, 1928, or 1930. A subsequent hearing was had on October 23, 1934, and Detective McGuire was sworn and examined by the relator's attorney. The officer testified positively that relator had said to Stearns that he was in Canada in August four years ago. The following also appears:

"Q. Well, Inspector Stearns may have asked this question, 'When were you last in Canada'? A. Yes, he did ask that question.

"Q. What did Patricola say? A. He said three or four years ago. Then Stearns said, 'Let's get this thing straight. When would you say you were last in Canada,' and he said, 'Make it about four years ago,' and Stearns said 'Are you sure' and he said 'Yes,' and Stearns said, 'About what month was it?' and he said, 'Around August.'"

The record clearly indicates that relator was given every opportunity to meet the claim of the government and to call witnesses, if he so desired. Although the examinations of Inspector Stearns and Officer McGuire by the attorney for the relator were searching and he and his attorney were given every opportunity on three different occasions to show that his statements and admissions to Inspector Stearns were not made understandingly and voluntarily, nothing of the kind appears. He produced no witnesses to show that his claim that he was not out of the country after 1926 or that he had no automobile after that date was true.

The Immigration Act 1917, § 19 (8 USCA § 155), provides for the deportation of an alien within five years of the entry where the alien was guilty of or admits the commission of a felony, or other crime or misdemeanor involving moral turpitude committed prior to entry.

On the preliminary hearing, it appears that the relator was convicted for speeding on October 11, 1922; was arrested on July 12, 1924, as a murder suspect and was finally convicted of petty larceny; that he was again arrested December 6, 1924, was convicted on August 20, 1924, of being a disorderly person, and placed on probation for one year; was taken in for violation of probation on May 22, 1925; was convicted on January 29, 1926, for petty larceny, and again on May 25, 1932, for assault in the second degree. The government stands on the conviction of January 29, 1926, for petty larceny. The relator testified that on that occasion he stole a dress from the J. N. Adam store in Buffalo. He was sentenced to the Erie County Penitentiary for this offense.

■ Voluntary statements of the alien, both as to entry and as to the commission of a crime involving moral turpitude, are admissible in deportation proceedings, and

were properly received. Ex parte Seisuke Fukumoto (C. C. A.) 53 F.(2d) 618; Bendel v. Nagle (C. C. A.) 17 F.(2d) 719, 57 A. L. R. 1129; U. S. v. Lee Hee (C. C. A.) 60 F.(2d) 924; U. S. ex rel. Bilokumsky v. Tod, 143 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221.

■■ There was testimony to support the order of deportation and the hearing was fairly conducted. Chan Wong v. Nagle (C. C. A.) 17 F.(2d) 987; U. S. ex rel. Chu Sun v. Karnuth (C. C. A.) 60 F.(2d) 930; U. S. ex rel. Bilokumsky v. Tod, supra. Beyond this, the courts are not at liberty to inquire. Ex parte Chin Loy You (D. C.) 223 F. 833; U. S. ex rel. Ferraro v. Karnuth (D. C.) 2 F. Supp. 315; Kwock Jan Fat v. White, 253 U. S. 454, 40 S. Ct. 566, 64 L. Ed. 1010.

■ Larceny, for which the relator was sentenced in 1926, was an offense involving moral turpitude within the meaning of the statute. U. S. ex rel. Parenti v. Martineau (D. C.) 50 F.(2d) 902. The relator's return from Canada in August, 1930, was a re-entry. U. S. ex rel. Carella v. Karnuth (D. C.) 2 F. Supp. 998; U. S. ex rel. Kowalenski v. Flynn (D. C.) 17 F.(2d) 524.

The writ must therefore be dismissed. So ordered.