Jacques Arthur **GUBBELS**, Plaintiff,

v.

Albert **DEL GUERCIO**, as District Director, Immigration and Naturalization Service, Los Angeles, California, Defendant.

No. 20481.

United States District Court
S. D. California,
Central Division.

June 12, 1957.

Arthur J. Phelan, San Francisco, Cal., and Marshall E. Kidder, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Asst. U. S. Atty., Arline Martin, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

■ Gubbels seeks judicial review of a final administrative order directing his deportation on the charge that he is an alien who, after entry, has been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.[1]

The plaintiff Gubbels is a native of Belgium, a citizen of The Netherlands, born March 4, 1935, who last entered the United States at the port of New York on February 3, 1948. He was admitted for permanent residence as a quota immigrant and has resided here continuously since such entry, except for absence abroad while in the service of the armed forces of the United States.

In 1952 plaintiff enlisted in the United States Army. On September 13, 1954, while serving in the army and stationed in Germany he was convicted in a general court-martial of violation of Article 121 of the Uniform Code of Military Justice,[2] in that he did at Rohrnbach, Germany, on or about March 16, 1954, steal a pistol, caliber .45, of a value of more than $50, the property of the United States. At the same court-martial he was charged and convicted of a second offense, viz., violation of Article 122 of the Uniform Code of Military Justice,[3] in that at Landshut, Germany, on or about August 2, 1954, by means of force and violence, he did steal from the person of J. R., against his will, an automobile of a value of more than $50. He was sentenced to confinement at hard labor for five years and dishonorable discharge. Following incarceration in the Federal Correctional Institution at Terminal Island, California, he was paroled on September 29, 1956.

The basic question for decision is whether a conviction by a military tribunal is a "conviction" within the meaning of § 241(a) (4) of the Immigration and Nationality Act (8 U.S.C.A. § 1251 (a) (4)). The question has never been decided in any reported case. It was present in United States ex rel. Parenti v. Martineau, D.C.D.Conn., 50 F.2d 902, but the court found it unnecessary to decide the point, and rested its decision on other grounds.

To support his contention that Congress did not intend that court-martial convictions should be included within the meaning of "convictions" as used in § 241(a) (4), Gubbels points to the distinctions between military tribunals and civil courts with particular emphasis on the right to jury trial in a civil court. Most of these distinctions are real, but they do not aid in the resolution of this problem. The distinctions were well known to Congress and had it desired to write them into the Act it would have done so. No distinction was made between "convictions" in jury trial and

1. Section 241(a) (4) of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1251(a) (4)),

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who * * *

"(4) * * * at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial."

2. Now 10 U.S.C.A. § 921.

3. Now 10 U.S.C.A. § 922.

"convictions" in court trial, just as no distinction was made with respect to "convictions" in federal, state, territorial and military courts.

■ Although military tribunals form no part of the judicial system of the United States, they possess the same full, complete and plenary power over offenses committed within their jurisdiction as the civil courts of the country do in theirs. Mr. Justice Harlan, speaking for the Court in Grafton v. United States, 206 U.S. 333, 345, 27 S.Ct. 749, 751, 51 L.Ed. 1084, stated: "It is alike indisputable that if a court-martial has jurisdiction to try an officer or soldier for a crime, its judgment will be accorded the finality and conclusiveness as to the issues involved which attend the judgments of a civil court in a case of which it may legally take cognizance."

In the Grafton case, Grafton, a private in the Army of the United States, was convicted of homicide in a civil court of the Philippine Islands. He had previously been acquitted of an offense based upon the same acts when tried before a general court-martial. The Grafton court held that "the same acts constituting a crime against the United States cannot, after the acquittal or conviction of the accused in a court of competent jurisdiction, be made the basis of a second trial of the accused for that crime in the same or in another court, civil or military, of the same government."

To assert that a conviction by court-martial which is a bar to prosecution in the civil courts is not a "conviction" within the meaning of § 241(a) (4) is untenable. Congress has chosen to confer upon courts-martial authority to try an officer or soldier for any crime committed by him in the territory in which he is serving. In most instances this jurisdiction is concurrent with that of the civil courts and a prosecution by court-martial is a bar to prosecution in the civil courts. While the constitutional rule against double jeopardy is not infringed by prosecution and punishment in both the Federal and State courts, as

they are distinct offenses (Hebert v. State of Louisiana, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270), most states have adopted statutes similar to California Penal Code, § 793, which provides: "When an act charged as a public offense is within the jurisdiction of another State or country, as well as of this State, a conviction or acquittal thereof in the former is a bar to the prosecution or indictment therefor in this State." Construing a statute similar to California Penal Code § 793, the Criminal Court of Appeals of Oklahoma in State ex rel. Cobb v. Mills, 82 Okl.Cr. 155, 163 P.2d 558, 167 P.2d 669, rejected the argument that a court-martial is not a court within the meaning of the statute and held that where one is charged and tried by court-martial it is a bar to another prosecution in the state courts. It would produce an incongruity to hold that Congress intended that a "conviction" within the meaning of § 241(a) (4) would depend upon which court first took hold of the case.

■ Deportation is a drastic measure and in construing a statute with several possible meanings we should select the one most generous to the alien (Fong Haw Tan v. Phelan, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433), but where a fair reading of the statute leaves it unambiguous, it is the duty of the court to give coherence to what Congress intended. Congress made no distinction between convictions in civil courts and military courts and intended none.

■ It is clear that the two offenses did not arise "out of a single scheme of criminal misconduct". The first offense was the theft of a pistol from the United States Government at Rohrnbach, Germany, March 15, 1954. Five months later, on August 2, 1954, at Landshut, Germany, the alien stole an automobile from an individual by means of force and violence. There was no connection between the two offenses, both of which involved moral turpitude. See United States ex rel. Parenti v. Martineau, D.C. D.Conn., 50 F.2d 902; Bartos v. United States, 8 Cir., 19 F.2d 722.

Judgment will be for the defendant whose counsel is directed to prepare, serve and lodge findings and judgment in accordance with local Rule 7, West's Ann.Code.