**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1427**

JEISSON HUMBERTO URIBE, a/k/a Pablo Uribe, a/k/a Jeisson Uribe, a/k/a
Jeisson Umberto Uribe, a/k/a Jeisson H. Uribe,

        Petitioner,

      v.

JEFFERSON B. SESSIONS III, Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 23, 2017                            Decided: May 3, 2017

Before DUNCAN, AGEE, and KEENAN, Circuit Judges.

Petition for review denied by published opinion. Judge Keenan wrote the opinion, in
which Judge Duncan and Judge Agee joined.

**ARGUED:** Luis Carlos Diaz, LAW OFFICES OF LUIS C. DIAZ, LLC, Silver Spring,
Maryland, for Petitioner. Jessica Dawgert, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Benjamin C. Mizer,
Principal Deputy Assistant Attorney General, Anthony Nicastro, Assistant Director,
Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

BARBARA MILANO KEENAN, Circuit Judge:

Jeisson Humberto Uribe, a native and citizen of Colombia, petitions for review of a final order of removal entered by the Board of Immigration Appeals (BIA). The BIA affirmed an immigration judge's (IJ) holding that Uribe was removable under 8 U.S.C. § 1227(a)(2)(A)(ii), based on two convictions for crimes involving moral turpitude. In reaching this conclusion, the IJ and the BIA rejected Uribe's contention that his conviction for the felony offense of third degree burglary, in violation of Maryland Criminal Law Section 6-204 (Maryland third degree burglary), did not qualify as a crime involving moral turpitude.

Upon our review, we conclude that Maryland third degree burglary qualifies as a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii). Accordingly, we deny Uribe's petition for review.

I.

Uribe was admitted to the United States as a lawful permanent resident in December 2000. In 2011, he was convicted of theft valued at less than $100, a misdemeanor offense under Maryland Criminal Law Section 7-104 (the Maryland theft offense), and was sentenced to serve a term of 90 days' imprisonment. In 2013, Uribe was convicted of Maryland third degree burglary, and received a sentence of two years' imprisonment.

Based on these two convictions, the Department of Homeland Security served Uribe with a Notice to Appear, charging him with removability under two provisions in

2

the Immigration and Nationality Act (INA) relating to his commission of crimes after having been admitted into the United States. These INA provisions are: (1) 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(F); and (2) 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two crimes involving moral turpitude.

Uribe denied removability on both these grounds. After a hearing, the IJ issued an order dismissing the charge that Uribe had committed an aggravated felony within the meaning of Section 1227(a)(2)(A)(iii). However, the IJ upheld the charge of removability under Section 1227(a)(2)(A)(ii), concluding that both the Maryland theft offense and Maryland third degree burglary were crimes involving moral turpitude.[1]

According to the IJ, Maryland third degree burglary necessarily involves conduct that inherently is vile and contrary to accepted moral norms because a dwelling, whether occupied or not when the burglary occurs, is distinct in character compared to other structures. The IJ reasoned that a dwelling is entitled to greater "protection and sanctity" than other buildings, and that, therefore, it is "a greater wrong to break and enter a dwelling in order to commit a crime than it is to break and enter any building in general to commit a crime."[2] Accordingly, the IJ sustained the charge of removability under

---

[1] As explained below, before the BIA, Uribe did not challenge the IJ's conclusion regarding his Maryland theft offense conviction, nor does he challenge that conclusion before this Court.

[2] In reaching her conclusion, the IJ found inapplicable two prior BIA decisions addressing burglary statutes of other states: (1) third degree burglary under New York law, which prohibited breaking and entering a building, or a room, or any part of a (Continued)

3

Section 1227(a)(2)(a)(ii), and ordered that Uribe be removed from the United States to Colombia.

On appeal before the BIA, Uribe challenged only the IJ's conclusion that Maryland third degree burglary qualifies as a crime involving moral turpitude. In an opinion issued by a single member, the BIA rejected Uribe's arguments, and affirmed the IJ's determination that Uribe was removable under Section 1227(a)(2)(A)(ii). The BIA agreed with the IJ's reasoning, stating that breaking and entering *any* dwelling (1) infringes upon a resident's reasonable expectation of privacy and security, and (2) generates a risk of violent confrontation with a resident, or with a third party such as a neighbor who may approach the dwelling while the crime is being committed. Accordingly, the BIA agreed with the IJ that Maryland third degree burglary inherently involves moral turpitude, and dismissed Uribe's appeal.

## II.

On appeal to this Court, Uribe contends that Maryland third degree burglary is not categorically a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii), because the offense: (1) does not require that the dwelling be occupied, inhabited, or within a lease period at the time of the burglary; (2) encompasses breaking into a dwelling by constructive means; (3) includes breaking into a motor vehicle or boat used

building, and (2) second degree burglary of an occupied dwelling under Florida law. *See Matter of Louissaint*, 24 I. & N. Dec. 754 (B.I.A. 2009) (Florida statute); *Matter of M.*, 2 I. & N. Dec. 721 (B.I.A. 1946) (New York statute).

as a "dwelling"; and (4) does not require that the crime the defendant intended to commit upon breaking and entering be one involving moral turpitude. Thus, Uribe maintains that Maryland third degree burglary does not necessarily involve conduct that inherently violates moral norms. We disagree with Uribe's position.

Under Section 1227(a)(2)(A)(ii), an "alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, . . . is deportable." The term "moral turpitude" refers to behavior "that shocks the public conscience as being inherently base, vile, or depraved."[3] *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014) (citing *Matter of Tobar-Lobo*, 24 I. & N. Dec. 143, 144 (B.I.A. 2007); *Matter of Danesh*, 19 I. & N. Dec. 669, 670 (B.I.A. 1988)). Accordingly, a crime involving moral turpitude encompasses "conduct that not only violates a statute but also independently violates a moral norm." *Id.*

Because the BIA adopted the IJ's opinion and supplemented the analysis with its own reasoning, we consider both rulings. *See Hernandez-Avalos v. Lynch*, 784 F.3d 944, 948 (4th Cir. 2015). The issue whether Maryland third degree burglary qualifies as a crime involving moral turpitude is a legal question that we review de novo. *See Sotnikau v. Lynch*, 846 F.3d 731, 735 (4th Cir. 2017) (citing *Mohamed*, 769 F.3d at 888). In

---

[3] We afford *Chevron* deference to the BIA's reasonable interpretation of the term "crime involving moral turpitude," used in the INA. *See Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014); *Prudencio v. Holder*, 669 F.3d 472, 480 (4th Cir. 2012); *Soliman v. Gonzales*, 419 F.3d 276, 281 (4th Cir. 2005) (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)); *Yousefi v. INS*, 260 F.3d 318, 325-26 (4th Cir. 2001). Uribe does not challenge the reasonableness of these established BIA definitions.

answering this question, we consider only the statutory elements of the offense, not the underlying facts of Uribe's conviction. *Id.* (citing *Mohamed*, 769 F.3d at 888). If the elements of Maryland third degree burglary encompass only conduct that involves moral turpitude, then that offense qualifies categorically as a crime involving moral turpitude under Section 1227(a)(2)(A)(ii). *Id.* In conducting our analysis, we apply the interpretations of Maryland law rendered by Maryland's state appellate courts. *See id.* at 736.

Maryland's third degree burglary statute prohibits "break[ing] and enter[ing] the dwelling of another with the intent to commit a crime."[4] Md. Code, Crim. Law § 6-204(a). The Court of Appeals of Maryland has explained that a breaking can be either actual or constructive. *Hobby v. State*, 83 A.3d 794, 811 (Md. 2014). An actual breaking occurs when an individual "unloos[ens], remov[es] or displac[es] any covering or fastening of the premises." *Id.* (internal quotation marks and citation omitted). In contrast, a constructive breaking occurs when an individual gains entry "by artifice, fraud, conspiracy or threat." *Id.* (internal quotation marks and citation omitted).

According to the Court of Appeals of Maryland, a "dwelling" is a structure that a person regularly uses as a place in which to sleep. *McKenzie v. State*, 962 A.2d 998, 1002, 1006 (Md. 2008); *see Hobby*, 83 A.3d at 811-12. Relying on this authority from Maryland's highest court, we have recognized that boats and other motor vehicles can

---

[4] The terms "break" and "dwelling," as used in the statute, retain their "judicially determined meaning[s,]" because the Maryland legislature has not altered those terms after the appellate courts of Maryland have defined them. Md. Code, Crim. Law § 6-201(b), (e).

constitute "dwellings" within the meaning of Maryland's burglary statutes. *See United States v. Henriquez*, 757 F.3d 144, 148-49 (4th Cir. 2014). And, under Maryland law, a structure retains its character as a dwelling even if it temporarily is left vacant, provided that the structure has not been abandoned completely by the occupants and remains "suitable for occupancy" throughout the vacancy. *See Hobby*, 83 A.3d at 812; *McKenzie*, 962 A.2d at 1002, 1007.

For example, in *McKenzie v. State*, 962 A.2d 998 (Md. 2008), the Court of Appeals of Maryland held that a vacant apartment qualified as a dwelling, when the most recent tenant had vacated the apartment two weeks earlier, the new tenant was scheduled to move in one day after the burglary occurred, and the apartment remained suitable for a new tenant during the period of vacancy. *Id.* at 999, 1005-07. The court explained that the apartment remained a dwelling throughout this sequence of events, because the apartment's owner intended that it be occupied on a continuous basis, and there was a "likelihood that people w[ould] be returning to inhabit the rental unit at any given time." *See id.* at 1006-07 (internal quotation marks and citation omitted). Similarly, the court held in *Hobby v. State*, 83 A.3d 794 (Md. 2014), that a home that was vacant for eight months remained a dwelling, because its prior occupant moved out of the home with the intent to sell it as a dwelling, maintained the home in a condition suitable for occupancy during the period of vacancy, and legally could have returned to the home at any time during the period of vacancy. *See id.* at 812.

In light of this authority, we conclude that under Maryland's third degree burglary statute, breaking and entering a dwelling of another, with the intent to commit a crime,

7

"implicate[s] . . . moral value[s] beyond the duty to obey the law" and inherently is "base, vile, or depraved." *See Mohamed*, 769 F.3d at 887, 889. The act of breaking and entering a dwelling, with the intent to commit *any* crime, necessarily involves conduct that violates an individual's reasonable expectation that her personal living and sleeping space will remain private and secure.[5] *See Hobby*, 83 A.3d at 812; *McKenzie*, 962 A.2d at 1006-07. And we are persuaded that an individual's expectation that her dwelling will remain private, secure, and free from intruders intending to commit a crime is violated regardless whether the dwelling is occupied at the time of the burglary.

Uribe maintains, nevertheless, that because the Court of Appeals of Maryland held in *Hobby* that Maryland third degree burglary encompasses the act of breaking and entering a house offered for sale that has been unoccupied for eight months, the commission of that offense under such circumstances cannot meet the definition of a crime involving moral turpitude. *See* 83 A.3d at 812. We disagree. As that court explained, in order for a house to constitute a dwelling under Maryland law in these circumstances, the house must not have been abandoned and must have remained suitable for habitation. *See id.*; *McKenzie*, 962 A.2d at 1002, 1007. Under such facts, a current or a prospective resident could occupy the house at any moment. Thus, the act of breaking

---

[5] Insofar as Uribe relies on *Matter of M.* for the proposition that a state burglary conviction qualifies as a crime involving moral turpitude only if the offense that the defendant intended to commit upon breaking and entering involves moral turpitude, the BIA recently rejected that approach in *Louissaint*. *See* 24 I. & N. Dec. at 759 (holding "that a residential burglary [does not] derive[ ] its morally turpitudinous nature solely from the culpability inherent in the crime that accompanies or precedes the act of breaking and entering a building"). And, for the reasons stated above, we agree with the BIA's reasoning in *Louissaint* interpreting a Florida burglary statute.

8

and entering a vacant house under these circumstances inherently would violate the current or prospective owner's expectation of security, and would infringe upon the current owner's right of habitation. Accordingly, the crime of breaking and entering with the intent to commit a crime, even in this factual context, remains contrary to well-recognized moral norms and is "base, vile, or depraved." *See Mohamed*, 769 F.3d at 887-89.

Additionally, we reject Uribe's assertion that a breaking is morally turpitudinous only if it involves the use, or the risk of use, of physical force, and that a constructive breaking is less reprehensible than an actual breaking. A constructive breaking is as equally reprehensible as an actual breaking because a constructive breaking includes acts of subterfuge and may also involve threats directed at another person. *See Hobby*, 83 A.3d at 811 (defining constructive breaking as breaking "by artifice, fraud, conspiracy, or threat").

Finally, we find no merit in Uribe's argument that the act of breaking and entering a boat or motor vehicle would not qualify as a crime involving moral turpitude under Maryland's third degree burglary statute. A burglar who breaks and enters a boat or a vehicle that is meant to be occupied, and is intended to be a place of personal security and privacy, has committed a crime that is contrary to well-recognized moral norms. *See Hobby*, 83 A.3d at 812; *McKenzie*, 962 A.2d at 1002, 1006. Therefore, the principles that render breaking and entering a traditional house contrary to moral norms apply equally to breaking and entering a boat or motor vehicle that meets the definition of a "dwelling" under Maryland law.

9

We therefore conclude that a conviction under Maryland's third degree burglary statute necessarily involves conduct that "shocks the public conscience as inherently base, vile, or depraved" and is contrary to recognized moral norms. *See Mohamed*, 769 F.3d at 887-88. Accordingly, we hold that Maryland third degree burglary qualifies as a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii).

## III.

For these reasons, we deny Uribe's petition for review.

*PETITION FOR REVIEW DENIED*